UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

E. MORÁN, INC.,

    Plaintiff – Counterdefendant,

v.

TOMGAL, LLC, d/b/a ROBIN RUTH

    Defendant – Counterclaimant.

Civil No. 22-1647 (ADC)

## OPINION AND ORDER

Before the Court is plaintiff-counterdefendant E. Morán, Inc.'s ("EMI") motion to dismiss counterclaim, filed on December 14, 2024. **ECF No. 100**. On January 25, 2024, defendant-counterclaimant TomGal, LLC d/b/a Robin Ruth ("Robin Ruth") filed a response in opposition. **ECF No. 104**. EMI followed with a reply on February 20, 2024. **ECF No. 114**. Robin Ruth concluded briefing on the matter with a sur-reply on February 28, 2024. **ECF No. 115**.

For the reasons set forth below, the Court **DENIES** EMI's motion to dismiss.

**I.**     **Brief Procedural Background**

EMI commenced the present action on December 29, 2022, by filing a complaint against Robin Ruth asserting violations of the Puerto Rico Dealer's Act, P.R. Laws Ann. t. 10 § 278 *et seq*. ("Law 75"), based on a contractual dispute concerning the distribution of certain branded souvenir products in Puerto Rico. **ECF No. 1**. EMI, as the distributor, alleged that principal Robin Ruth impaired and/or terminated the commercial relationship between them in violation of Law 75 and sought, through a separate motion, preliminary injunctive relief. **ECF No. 8**. The

Court referred the request for a preliminary injunction to U.S. Magistrate Judge Giselle López-Soler, who held an evidentiary hearing over the course of three days—on February 24 and March 1 and 15, 2023—and issued a report and recommendation ("R&R") to the effect that the Court deny the preliminary injunction request. *See E. Morán, Inc. v. Tomgal, LLC*, No. CV 22-1647 (ADC-GLS), 2023 WL 3194682 (D.P.R. May 2, 2023) (**ECF No. 60**). The Court adopted the R&R over EMI's objections in an Opinion & Order issued on September 28, 2023. *See E. Morán, Inc. v. Tomgal, LLC*, No. CV 22-1647 (ADC), 2023 WL 6307000 (D.P.R. Sept. 28, 2023) (**ECF No. 92**).

While the parties were actively litigating the preliminary injunction request, on February 23, 2023, Robin Ruth filed a motion to partially dismiss the complaint for failure to state a claim. **ECF No. 23**. After EMI filed its opposition (**ECF No. 57**), Robin Ruth its reply (**ECF No. 67**), EMI its sur-reply (**ECF No. 72**), and after the Magistrate Judge issued her R&R on the preliminary injunction request (**ECF No. 60**), EMI sought leave to file an amended complaint. *See* **ECF No. 74**. Robin Ruth opposed. **ECF No. 86**. Nonetheless, the Court granted EMI leave to file its amended complaint and denied Robin Ruth's motion to partially dismiss, without prejudice. **ECF No. 92**.[1]

Accordingly, EMI filed the amended complaint on October 18, 2023. **ECF No. 96**. Robin Ruth followed by filing an answer as well as a counterclaim. **ECF No. 97**. Robin Ruth asserted among others, the following affirmative defenses against EMI's Law 75 claims: that EMI is not

---

[1] Robin Ruth's motion for partial dismissal was also referred to Magistrate Judge López-Soler for an R&R (**ECF No. 46**), but the Court rendered that referral moot when it denied the motion.

entitled to Law 75 protections because it agreed to the voluntary termination of the distribution relationship on August 30, 2022 (*id.*, at 13 ¶ 9); alternatively, that Robin Ruth had "just cause" to terminate its relationship with EMI (*id.*, at 14-15 ¶¶ 16-18, 27); and that Robin Ruth is entitled to an award of attorneys' fees incurred in defending against EMI's baseless claims (*id.*, at 15 ¶ 31). For its part, Robin Ruth's counterclaim comprises four causes of action, namely: first, a request for a declaratory judgment under 28 U.S.C. § 221(a) to the effect that EMI cannot avail itself of the protections of Law 75; a second request for a declaratory judgment declaring that, if Law Act 75 were applicable, Robin Ruth nevertheless had just cause to terminate its relationship with EMI; third, a cause of action for breach of contract and lost profits under Puerto Rico Law; and fourth, a request for attorneys' fees under Law 75. *See* **ECF No. 97** at 28-32.

This brings the story up to the motion presently before the Court: EMI's motion to dismiss Robin Ruth's counterclaim, filed on December 14, 2023. **ECF No. 100**. In essence, EMI argues that Robin Ruth's Law 75 causes of action are merely "repackaged" affirmative defenses to its own claims which should be dismissed under Fed. R. Civ. P. 12(f) as redundant, and that Robin Ruth fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6) for breach of contract and lost profits. Robin Ruth filed its response in opposition on January 25, 2024. **ECF No. 104**. There, Robin Ruth asserts, in sum, that Rule 12(f) is not a proper vehicle to seek the dismissal of a counterclaim; that it is compelled to assert its Law 75 causes of action as a counterclaim because they are compulsory in nature; contain specific requests for remedies; are not redundant of its affirmative defenses; and that, even if they were, litigating them would not prejudice EMI. *Id.*,

at 7-13. EMI filed a reply on February 20, 2024, in which it further restated its grounds for dismissal. **ECF No. 114**. Robin Ruth then filed a sur-reply on February 28, 2024, focused on addressing EMI's arguments regarding its breach of contract and damages claim. **ECF No. 115**.

The matter being fully briefed, the Court now turns to its resolution.

**II.     Legal Standard**

Rule 12(f) of the Federal Rules of Civil Procedure allows a party to move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). It has been said that a motion to strike under Rule 12(f) is "neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint, or a counterclaim…." 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1380 (4th ed. 2024). And by and large, these types of motions "'are disfavored' and 'rarely granted absent a showing of prejudice to the moving party.'" *Autila v. Mass. Bay Transp. Auth.*, 342 F.R.D. 23, 32 (D. Mass. 2022) (quoting *Wilmington Tr., Nat'l Ass'n v. Howe*, No. 2:21-cv-00278-NT, 2022 WL 1522247, at *4 (D. Me. May 13, 2022) and citing other authorities). Notwithstanding, courts may exercise their "considerable discretion" to strike or dismiss "redundant" counterclaims that "merely restate issues already before the court as part of the plaintiff's affirmative case." *Philips Med. Sys. Puerto Rico, Inc. v. Alpha Biomedical & Diagnostic Corp.*, Civ. No. 19-1488 (BJM), 2020 WL 7029014 (D.P.R. Nov. 30, 2020) (quoting *Atlantic Recording Corp. v. Serrano*, No. 07-CV-1824 W(JMA), 2007 WL 4612921, at *4 (S.D. Cal. Dec. 28, 2007)); *see also Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613, 618 (1st Cir. 1988) ("A court has considerable discretion" when

ruling on a Rule 12(f) motion); *Gilbane Building Co. v. Universal Fire Sprinkler Co., Inc.*, Civ. No. 15-3029 (JAG), 2017 WL 11641460, *3 (D.P.R. Feb. 14, 2017) (dismissing counterclaim for declaratory judgment on redundancy grounds); *Zurich American Ins. Co. v. Watts Regulator Co.*, 796 F. Supp. 2d 240 (D. Mass. 2011) (defining a redundant matter as "one that consists of allegations that constitute a needless repetition of other averments" and dismissing redundant counterclaim).

As to a motion to dismiss brought under Fed. R. Civ. P 12(b)(6), courts must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action… [and they] must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (cleaned up) (citing, inter alia, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In order to perform this plausibility inquiry, the Court must "separate factual allegations from conclusory ones and then evaluate whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citing *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If the factual allegations in a complaint, stripped of conclusory legal allegations, raise no 'more than a sheer possibility that a defendant has acted

unlawfully,' the complaint should be dismissed." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (quoting *Rodríguez-Reyes*, 711 F.3d at 53, and *Iqbal*, 556 U.S. at 678). In sum, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

### III.   Robin Ruth's Allegations

As part of the required Rule 12(b)(6) analysis, the Court will identify below the relevant well-pleaded allegations included in the counterclaim.[2] This will also assist in the disposition of EMI's Rule 12(f) challenge.

Robin Ruth operates worldwide within the souvenir industry, creating fashion apparel and accessories. **ECF No. 97** at 17, ¶¶ 5-6. In 2012, EMI was selling in Puerto Rico products that copied the designs of Robin Ruth products. *Id.*, at 18, ¶ 11. Robin Ruth's member and authorized representative, Mr. Omri Shabi, became aware of this and decided to directly contact Mr. Emiliano Morán, EMI's principal, to convince him to discontinue the practice. *Id.*, at ¶ 12. As a result, Robin Ruth and EMI entered into an agreement for the distribution of authentic Robin Ruth products in Puerto Rico, and EMI ceased copying Robin Ruth products. *Id.*, at ¶ 13. This agreement was not put into writing, but its terms included EMI's agreement to comply with Robin Ruth's worldwide distribution standards, which in turn included a prohibition on

---

[2] The counterclaim contains several allegations which could be considered well-pleaded but serve mainly as background information. For the sake of brevity, the Court will only list those well-pleaded allegations it considers relevant to the disposition of EMI's Rule 12(b)(6) challenge.

producing or selling copies of Robin Ruth products and on selling any directly competing products. *Id.*, at ¶ 14. As Robin Ruth's distributor, EMI was charged with the responsibility of distributing and developing the market for authentic Robin Ruth products in Puerto Rico. *Id.*, at 19, ¶ 15. Through Robin Ruth's national vendor agreements, EMI gained access to retailers such as Walmart, CVS, and Walgreens. *Id.*, at 18, ¶ 13.

In 2018, Robin Ruth requested all of its distributors, including EMI, to sign a written distribution agreement which purpose was to memorialize all the duties and obligations distributors had towards Robin Ruth, consistent with the terms in place since the commencement of their relationships. *Id.*, at 19, ¶ 16. EMI was sent such an agreement but did not sign it. *Id.* Nonetheless, Robin Ruth continued to rely on the assumption that EMI was honoring the terms of its agreement regarding the prohibition against producing or selling Robin Ruth copies and competing products. *Id.*, at ¶ 17.

Back on March 25, 2012, Robin Ruth hired Mr. Francesco Castaño as its Director of Partnership Development. *Id.*, at ¶ 18. Mr. Castaño was a trusted employee of Robin Ruth, had access to confidential business information, and acted as the bridge between Robin Ruth and EMI, helping the latter to grow the market in Puerto Rico for Robin Ruth products. *Id.*, at 19-20, ¶¶ 19-24. On September 5, 2021, Mr. Castaño announced to Robin Ruth that he was going to resign to pursue other business opportunities in the food distribution business, and he officially resigned from Robin Ruth on October 1, 2021. *Id.*, at 20, ¶ 25.

In April 2022, Robin Ruth became aware that Mr. Castaño's new company, Fashion Code, began selling competing products through the former's Hawaii distributor. *Id.*, at 21, ¶¶ 26-28. In June 2022, Robin Ruth became aware that EMI had purchased products from Fashion Code. *Id.*, at 21, ¶ 29. Robin Ruth sent an employee to Puerto Rico to investigate and concluded that EMI was purchasing large quantities of Fashion Code products, contrary to EMI's assurances. *Id.*, at ¶¶ 30-31. Moreover, Robin Ruth discovered that EMI was using the Universal Product Code ("UPC") associated with Robin Ruth's vendor number in Walmart's system to sell Fashion Code-branded products to Walmart. *Id.*, at ¶ 32. As a result, retailers like Walmart stocked competing Fashion Code products alongside Robin Ruth products in sections that were supposed to be reserved exclusively for Robin Ruth products. *Id.*, at 23, ¶¶ 35-36.

Without Robin Ruth's UPC, Fashion Code would have had to create a brand-new supplier number and pitch its brand to Walmart to get shelf space. *Id.*, at 24, ¶ 37. In other words, it would not have managed to get its products stocked at Walmart as easily as it did. *Id.* By misusing Robin Ruth's UPC, EMI and Fashion Code managed to bypass the steps required to obtain shelf space in Walmart and were able to place Fashion Code products in spaces that had been traditionally filled with Robin Ruth products. *Id.*

Robin Ruth alleges that Mr. Castaño sold products to EMI as early as September of 2021 while still employed by Robin Ruth and by using its confidential trade secrets. *Id.*, at ¶ 38. It further alleges that EMI and Mr. Morán knew or should have known of this fact. *Id.*, at ¶ 41, and

at 25, ¶ 45. Robin Ruth calculates that EMI commenced a distribution relationship with Fashion Code as early as May 2021. *Id.*, at 25, ¶ 44.

In the summer of 2022, Mr. Shabi of Robin Ruth engaged in discussions with Mr. Morán of EMI to find an amicable solution to EMI's failure to meet Robin Ruth's distribution standards. *Id.*, at 26, ¶ 52. During a telephone conversation held on August 30, 2022, Robin Ruth offered EMI an opportunity to cure its breach and maintain the distribution relationship if it ceased distributing Fashion Code products. *Id.*, at ¶ 53. EMI opted instead to terminate its relationship with Robin Ruth, pursuant to which Robin Ruth later sent EMI a letter on September 1, 2022, memorializing the terms of termination and transition that had been agreed to during the telephone conversation. *Id.*, at ¶¶ 54-55. The letter is alleged to state, in part:

> "We hereby confirm our telephone conversation of August 30, 2022, during which TomGal LLC dba Robin Ruth USA ("RRU") and RRP Trading Limited (jointly with RRU referred to as "TomGal"), and E. Morán Inc. ("EMI," jointly with TomGal referred to as the "Parties") agreed to voluntarily terminate the distribution relationship between the Parties and mutually release themselves as described below."

*Id.*, at 26-27, ¶ 56. Robin Ruth alleges that EMI and Mr. Morán acknowledged receipt and confirmed its willingness to put in writing the verbal agreement. *Id.*, at 27, ¶¶ 57-58. Later, a revised draft of the agreement was prepared and sent to EMI at Mr. Morán's request. *Id.*, at ¶ 58.

However, EMI continued acting in violation of the terms of the agreement with Robin Ruth by, among other things, continuing to sell competing Fashion Code products. *Id.*, at ¶ 59.

On October 14, 2022, EMI, through counsel, sent Robin Ruth a letter threatening to sue. *Id.*, at ¶ 60. The letter fails to make any mention of the then-pending draft of the written termination agreement. *Id.* Robin Ruth alleges that EMI has backtracked on and breached its verbal agreement to voluntarily terminate its distribution relationship, and instead opted to pursue legal action against Robin Ruth in bad faith. *Id.*, at ¶¶ 61-62. Robin Ruth further alleges that EMI's failure to fulfill its obligations under the distribution agreement has forced it to stop making deliveries to EMI and, as a result, this has affected its commercial relationships in Puerto Rico with retailers Walmart, CVS, and Walgreens. *Id.*, at 28, ¶¶ 63-64.

IV. **Discussion**

   A. **Whether Robin Ruth's first, second and fourth causes of action should be stricken as redundant.**

EMI's motion to strike is premised on the redundancy between Robin Ruth's counterclaim and its affirmative defenses to EMI's amended complaint. A brief review of EMI's causes of action helps place the controversy in its proper context.

   1. **EMI's amended complaint.**

To wit, EMI alleges in its amended complaint that sometime during 2012, EMI and Robin Ruth entered into an exclusive distribution agreement for Robin Ruth products in Puerto Rico. **ECF No. 96** at 2, ¶ 8. Throughout the duration of the agreement, EMI performed the "typical functions" of a distributor and increased yearly sales of Robin Ruth products from $568,000 in 2013 to $2,214,000 in 2021. *Id.*, at 2, ¶ 9, and at 7, ¶¶ 36-37. Beginning in 2021, EMI alleges that

Robin Ruth's shipments to EMI were considerably delayed while other distributors experienced no delays. *Id.*, at 3, ¶¶ 11-12. EMI placed additional orders to Robin Ruth in February and May of 2022, but Robin Ruth refused to deliver the purchased merchandise. *Id.*, at ¶¶ 13-17. Instead, Robin Ruth insisted that EMI could either execute a new written distribution agreement "which unilaterally changed the terms of the distribution relationship" that the parties had until then followed, or execute a termination agreement that afforded it "no compensation." *Id.*, at 3-4, ¶ 18. Robin Ruth also withheld payment over pending invoices for sales of Robin Ruth products to Walmart in 2022. *Id.*, at ¶ 19.

At this point, chronologically, the Court notes that EMI next filed its original complaint on December 29, 2022. **ECF No. 1**. Many of the amended complaints remaining factual allegations concern developments that occurred in the context of the parties' litigation of EMI's preliminary injunction request, which, as noted above, the Court denied. *See E. Morán, Inc. v. Tomgal, LLC*, No. CV 22-1647 (ADC), 2023 WL 6307000 (D.P.R. Sept. 28, 2023). Thus, EMI alleges that Robin Ruth slowly began to make payments on the Walmart invoices only after the filing of the original complaint, and that the distribution relationship with Robin Ruth was essentially "at a standstill," with neither party having expressly terminated it. **ECF No. 96** at 4, ¶¶ 23-24. EMI further alleges that it was only during the evidentiary hearings on the preliminary injunction—held between February and March of 2023—that Robin Ruth's officers expressed their intent to "achieve the termination of the distribution relationship. *Id.*, at 4-5, ¶ 25. Yet, even in April 2023, EMI alleges that Robin Ruth's The Netherlands' headquarters continued to refer

new clients to it to serve their needs in Puerto Rico. *Id.*, at 5, ¶ 26. It was only on June 6, 2023, that EMI formally confirmed Robin Ruth's express intent to terminate its distribution relationship with EMI through information passed on by a Walmart agent. *Id.*, at ¶ 27.

Under these factual allegations, EMI requests in its first cause of action that the Court issue a preliminary injunction to maintain the distribution relationship (a matter which is now, by all lights, moot). *Id.*, at 5-6, ¶¶ 30-33. Its second cause of action asks the Court to order that Robin Ruth pay EMI, under Law 75: (a) $50,000 for the actual value of its efforts to advertise, place and sell Robin Ruth products; (b) an undefined amount for the present value of the goodwill attributable to the distribution of the Robin Ruth line; (c) $1,000,000 in lost sales for the year 2022; and (d) over $4,485,500 as the sum of the profits obtained by EMI during the last five years of its distribution of Robin Ruth's products in Puerto Rico. *Id.*, at 8-9, ¶¶ 34-43. Finally, EMI's third cause of actions asks for attorneys' fees under Law 75. *Id.*, at 9-10, ¶¶ 44-50.

### 2. Comparison of Robin Ruth's affirmative defenses and causes of action.

Before turning to comparing Robin Ruth's defenses to these allegations and the counterclaim it seeks to assert, the Court notes that the parties clearly do not dispute the applicability of Law 75 to their distribution relationship from 2012 to at least August 30, 2022. Robin Ruth's position, as expressed both in its affirmative defenses and its counterclaim, is that EMI may not claim any damages under Law 75 because it voluntarily terminated the relationship. The concrete consequence of making this finding, according to Robin Ruth, would be that EMI cannot claim any damages under Law 75. Alternatively, if the Court finds that EMI

did not voluntarily terminate the relationship, then Robin Ruth argues that it had just cause to unilaterally terminate it.

This sets up the context needed to resolve EMI's motion to strike. As to the first counterclaim, the relief Robin Ruth seeks and what it asserts in its ninth affirmative defense is essentially the same. *Compare* **ECF No. 97** at 13, ¶ 9 ("On August 30, 2022, Robin Ruth and EMI agreed to the voluntary termination of the distribution relationship. As a result, EMI is not entitled to the Law 75 protections averred in the Amended Complaint.") *with id.*, at 29, ¶ 70 ("Because EMI voluntarily decided to terminate the distribution relationship with Robin Ruth on August 30, 2022, this Honorable Court should enter judgment declaring that EMI is not afforded the protections and causes of actions under Law 75."). The Court will have to determine whether the distribution agreement was terminated on August 30, 2022, when evaluating EMI's Law 75 claim and Robin Ruth's defenses. It is hard to see how a separate declaration on this matter is necessary.

As to Robin Ruth's second cause of action, the Court finds that Robin Ruth's sixteenth, seventeenth, eighteenth, and twenty-seventh affirmative defenses are its factual and legal equivalents. *Compare id.*, at 14, ¶¶ 16-18, 27 *with id.*, at 29-30, ¶¶ 73-75. Robin Ruth raises a "just cause" defense against EMI's Law 75 claims, alleging the same grounds for termination as it uses in its counterclaim. Moreover, the second cause of action assumes the rejection of the first, which tracks the cited affirmative defenses. *See, e.g., id.*, at 14, ¶ 16 ("In the alternative, should this Court determine that the distribution agreement was not terminated on August 30, 2022,

Robin Ruth has just cause to terminate its relationship with EMI."). That means that, in resolving EMI's claims, if the Court rejects Robin Ruth's defense that EMI voluntarily terminated the relationship, it will then have to pass judgment on whether just cause existed. That is the same thing it would have to do in ruling on Robin Ruth's contingent second cause of action.

Lastly, as to Robin Ruth's fourth cause of action claiming attorneys' fees under Law 75, the Court points out that Robin Ruth also included a similar request in its thirty-first affirmative defense. *Compare id.*, at 15, ¶ 31 *with id.*, at 31-32, ¶¶ 85-87. The only difference between these requests for attorneys' fees is that the one included as an affirmative defense does not invoke a specific statute, whereas the one in the counterclaim is contingent on the applicability of Law 75. The Court does not see this difference as significant—and no party argues that Robin Ruth would be at all precluded from requesting attorneys' fees under Law 75 if it prevails in its defense against EMI's claims.

Seen from this angle, it is not without reason that EMI considers these causes of action gratuitous, redundant, and worthy of being stricken or dismissed. Any reasonable observer would be justified in thinking that these are unnecessary given Robin Ruth's affirmative defenses. However—and here lies the rub—in the end, they represent no prejudice to EMI or the Court insofar as affording the requested relief (if warranted) will not entail any undue expenditure of time or resources. The same facts, evidence, and legal arguments that Robin Ruth will presumably use to attempt to defeat EMI's Law 75 claims will likely have to be the same as those which it will use to attempt to prevail on its Law 75 causes of action. Moreover, the facts

included in the counterclaim far exceed in detail those referenced by Robin Ruth in its answer to EMI's amended complaint. *See* **ECF No. 97** at 17-29. These would be sufficient to sustain an independent action for declaratory judgment on their own. Thus, even though Robin Ruth's counterclaim is largely unnecessary, serving rather as an advance of its factual defenses, the lack of any significant prejudice persuades the Court that the drastic remedy of striking or dismissing it, is unwarranted. In the absence of any demonstrable and significant prejudice to EMI, the Court will exercise its considerable discretion under Fed. R. Civ. P. 12(f) and maintain the objected Law 75 causes of action.

### B. Whether Robin Ruth's third cause of action for breach of contract survives EMI's Rule 12(b)(6) challenge.

Turning now to the Rule 12(b)(6) challenge, EMI seeks to dismiss Robin Ruth's third cause of action on the basis that it fails to state a claim for breach of contract. More specifically, EMI argues that Robin Ruth's claim fails because (1) it lacks allegations establishing a relevant timeframe for the alleged breaches and that, because Robin Ruth claims the contractual relationship ended on August 30 2022, it cannot claim damages for actions occurring after that date; (2) Robin Ruth cannot establish that it suffered damages from the alleged breaches because it cannot establish the contractual terms that were allegedly breached; and (3) any damages are self-inflicted because they stem from Robin Ruth's own decision to cease selling its products in Puerto Rico through EMI. **ECF No. 100** at 10-13. On reply, EMI also complains about the lack of

specific details as to what acts EMI committed that constituted a breach of contract. *See* **ECF No. 114** at 4-6.

The well-pleaded facts in the counterclaim, taken as true for purposes of Fed. R. Civ. P. 12(b)(6), establish that a contractual distribution relationship existed between EMI and Robin Ruth since 2012. **ECF No. 97** at 18, ¶ 13. They further establish that part of EMI's contractual obligations included complying with Robin Ruth's "worldwide distribution standards." *Id.*, at 18-19, ¶¶ 14-15. Robin Ruth adequately alleges that EMI breached these obligations by selling directly competing products and misusing Robin Ruth's UPC for Walmart to sell Fashion Code products. *Id.*, at 21-24, ¶¶ 26-41. These actions are alleged by Robin Ruth to have caused it damages and loss of profits because it has impacted its commercial relationship with retailers like Walmart, CVS, and Walgreens in Puerto Rico. *Id.*, at 28, ¶¶ 63-64, and at 31, ¶ 81.

The Court does not share EMI's sense of indeterminacy and lack of specificity with regards to these allegations. The breached contractual terms and actions are adequately alleged. Causation is also adequately alleged. And EMI's attempt to hold the Magistrate Judge's findings of fact against Robin Ruth is unavailing. As the Magistrate Judge pointed out in her R&R, her findings of fact were made "**solely for purposes of making a recommendation as to EMI's request for a preliminary injunction.**" *E. Morán, Inc. v. Tomgal, LLC*, 2023 WL 3194682 at *1 (emphasis in original) (citing *José Santiago, Inc. v. Smithfield Packaged Meats Corp.*, 66 F.4th 329 (1st Cir. 2023); *see also Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991) ("[A] court's

conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes.").

Therefore, the well-pleaded facts of the counterclaim, when taken as true, clearly suffice to maintain a breach of contract action. The Court need not dwell any further on this matter.

## V. Conclusion

For all of the above reasons, the Court **DENIES** EMI's motion to dismiss Robin Ruth's counterclaim, at **ECF No. 100**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of June, 2024.

                                              **S/AIDA M. DELGADO-COLÓN**
                                              **United States District Judge**